**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,**

v.

**Gary FRANCIS, Appellee.**

**No. 01–83–0644–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 12, 1984.

Rehearing Denied May 10, 1984.

Arthur M. Glover, Hicks, Hirsch, Glover, Robinson & Sheiness, Paul E. Anderson, Jr., Hicks, Hirsch, Glover, Robinson & Sheiness, Ben Ramsey, Ramsey & Murray, Houston, for appellant.

Dale Friend, Kronzer, Abraham, Watkins, Nichols, Ballard & Friend, John R. Leach, III, Kronzer, Abraham, Watkins, Nichols, Ballard & Friend, Houston, for appellee.

Before BASS, COHEN and WARREN, JJ.

## OPINION

WARREN, Justice.

This is a suit to establish insurance coverage and to collect from the appellant insurance carrier the damages recovered by the appellee in a trial against an alleged non-named insured.

Appellee filed this suit alleging that the non-insured became an insured under the policy because he was a "user" of the automobile with the permission of the owner who was the named insured. Both sides filed a motion for summary judgment, and after a hearing, the court granted the appellee's motion and denied that of the appellant. We affirm.

On December 9, 1975, Joseph Chevalier, Earl Ellis, and two other men embarked on a hunting trip to Galveston County. Before the trip, a trailer holding a boat and motor, all owned by Earl Ellis, was hooked to a pick-up owned by Joseph Chevalier and insured by the appellant. While Chevalier, as driver, and Ellis, as passenger, were traveling on Highway 45 toward Galveston County, the boat and motor fell from the trailer and struck an automobile being driven by the appellee.

The appellee sued Chevalier and Ellis for personal injuries he received in the collision. The jury found Ellis negligent in failing to properly secure the boat and motor to the trailer, and that the failure to secure was a proximate cause of the accident, but it absolved Chevalier of any negligence. After the appellant declined to pay the judgment on behalf of Ellis, the appellee sued to collect the judgment claiming that Ellis was an insured under Chevalier's insurance policy because he was a permissive "user" as defined in the policy.

The relevant portions of the insurance policy follows:

I. Coverage A-Bodily Injury Liability; Coverage B-Property Damage Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by any person;

B. injury to or destruction of property, including loss of use thereof, hereinafter called "property damage";
arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy...

\*   \*   \*   \*   \*   \*

Persons Insured. The following are insureds under Part I:

(a) with respect to the owned automobile,

(1) the named insured and any resident of the same household,

(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and

(3) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a)(1) or (2) above;

(b) with respect to a non-owned automobile,

(1) the named insured,

(2) any relative, but only with respect to a private passenger automobile or trailer, provided his actual operation or (if he is not operating) the other actual use thereof is with the permission or reasonably believed to be with the permission, of the owner and is within the scope of such permission, and

(3) any other person or organization not owning or hiring the automobile, but only with respect to his or its liability because of acts or omissions of an insured under (b)(1) or (2) above.

Definitions. Under Part I:

"named insured" means the individual named as named insured in the declarations and also includes his spouse, if a resident of the same household;

"insured" means a person or organization described under "Persons Insured";

"relative" means a relative of the named insured who is a resident of the same household;

"owned automobile" means

(a) a private passenger, farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded,

(b) a trailer owned by the named insured....

"non-owned automobile" means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile;

"use" of an automobile includes the loading and unloading thereof;

The main question presented for our determination is whether at the time of the collision Ellis was a "user" as defined in the policy.

The Part I, Coverage B, Persons Insured (a)(2) portion of the policy provides that any person using the insured automobile with the permission of the named insured becomes an insured under the policy if the use is within the scope of the permission granted by the named insured.

Under Definitions, Part I, the policy provides that "use" of an automobile includes the loading and unloading thereof.

Neither side disputes the fact that the trailer, boat, and motor were hooked to Chevalier's pickup truck with the express consent of Chevalier, nor is there any dispute that the boat was not to be used by one of the parties to the exclusion of the other parties on the trip, nor that a trailer when being used is afforded the same status as the automobile.

Appellant contends that Ellis was not a user because only Chevalier, as driver, was using the trailer and boat and that the negligence, as found by the jury in the personal injury case against Ellis, preceded the use of the boat with the truck.

Appellant also strenuously argues that since neither the act of loaning another a boat and trailer, or the act of riding as a passenger in another's automobile, makes the lender or passenger an insured, then we should not allow the two acts to be combined to make Ellis an insured. That summation ignores other facts and conditions existing at the time of the accident. Although Chevalier was driving the automobile, Ellis was making the same use of the trailer as Chevalier. This use was a joint use which began when the trailer containing the boat and motor was hooked to the automobile, and such use would not end until the boat and motor had been unloaded from the trailer. There has never, to our knowledge, been an allegation or sugges-

tion that Ellis loaned the boat and trailer to Chevalier.

■ Appellant's suggestion that as a passenger Ellis could not be a user is refuted by the Part I, Coverage B, Persons Insured (a)(2) portion of the policy, which states that permissive use includes actually operating the automobile as well as a non-operating use. Also, the courts of other jurisdictions have held that a passenger may be a user.

In *National American Ins. Co. v. Insurance Company of North America*, 73 Cal. App.3d 628 (Cal.App.1977), the court held that a passenger who threw an egg from a car was held to be a "user" of the car because the motion of the car contributed to the speed of the thrown egg.

In *Transamerica Insurance Group v. United Insurance Co.*, 92 Wash.2d 21, 593 P.2d 156 (1979) the court held that a passenger moving his rifle inside the cab of a truck, causing it to bump the inside of the truck and discharge, was a "user" because the vehicle itself causally contributed to the accident.

In *Home Indemnity v. Lively*, 353 F.Supp. 1191 (D.C.Okla.1972), a passenger who threw a pop bottle from a moving vehicle and struck a pedestrian was held to be a "user."

■ In each of those cases, the court reasoned that coverage as a "user" should be extended to the passenger because the accident need not be proximately caused by the act of the passenger, but only that the accident arise out of the use of the automobile. Since our policy of insurance provides coverage for damages *"arising out of the ownership"*, maintenance or *use*, no proximate causation need be shown between the use of the automobile or trailer, and the accident. *Blue Bird Body Co. v. Ryder Truck Rental*, 583 F.2d 717 (5th Cir.1978).

■ Approaching the problem from a different perspective, Ellis was a "user" by reason of that definition in the policy including the "loading or unloading of an automobile" as a "use" under the policy.

Appellant contends that appellee is not entitled to recover under that theory because no specific reference was made during the first trial to loading or unloading. We disagree. The jury found that Ellis failed to properly secure the boat to the trailer, which in effect was a finding that he negligently loaded the trailer. The proper securing of the boat to the trailer would be a most important aspect of the loading, since it would be absolutely necessary to the safe transportation of the boat.

The insurance coverage is not confined to acts occurring during the loading or unloading because "loading and unloading," within the automobile insurance policy embraces not only the immediate transference of the goods to or from a vehicle but the complete operation of transporting goods between the vehicle and the place from, or to where, they are being delivered. *Travelers Insurance Co. v. Employers Casualty Co.*, 380 S.W.2d 610 (Tex.1964).

■ We hold that at the time of the accident, Ellis was a "user" within the meaning of the automobile liability policy and as such was entitled to coverage as an insured.

Affirmed.